506 F.2d 696
 4 Envtl. L. Rep. 20,809
 Ralph W. KEITH and Esther May Keith, husband and wife, et
al., Plaintiffs-Appellees,
v.
CALIFORNIA HIGHWAY COMMISSION et al., Defendants-Appellants.
Ralph W. KEITH and Esther May Keith, husband and wife, et
al., Plaintiffs-Appellees,
v.
Claude S. BRINEGAR, as Secretary of Transportation, et al.,
Defendants-Appellants.
 No. 72-3072.
 United States Court of Appeals, Ninth Circuit.
 Sept. 27, 1974
Certiorari Denied Jan. 27, 1975
See 95 S.Ct. 826.
 
 Robert V. Cohune (argued), Los Angeles, Cal., Joseph A. Montoya (argued), Dept. of Public Works, Legal Div., Los Angeles, Cal., for defendants-appellants.
 Fredric P. Sutherland (argued), the Center for Law in the Public Interest, Los Angeles, Cal., for plaintiffs-appellees.
 Royal M. Sorensen (argued), Burke, Williams & Sorensen, Los Angeles, Cal., for amicus curiae.
 Before CHAMBERS, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE and SNEED, Circuit Judges.
 OPINION
 DUNIWAY, Circuit Judge:
 
 
 1
 We elected to hear this case in banc, together with Lathan v. Brinegar, 9 Cir., 506 F.2d 677, also decided today, to consider whether the court erred in enjoining further work on an interstate freeway until a further public hearing is held under section 128(a) of the Federal-Aid Highway Act (23 U.S.C. 128(a)) as amended.
 
 
 2
 This case, like Lathan v. Brinegar, supra, deals with an interstate highway. Highway I-105, also called the Century Freeway, is a proposed seventeen-mile section of interstate highway which, if constructed, will stretch across the southern portion of the densely populated Los Angeles basin. It would connect the Los Angeles International Airport on the west with the San Gabriel River Freeway (I-605) on the east, and would traverse the cities of El Segundo, Hawthorne, Inglewood, Lynwood, South Gate, Paramount, Downey, and Norwalk, the Watts section of the city of Los Angeles, and unincorporated areas of Los Angeles County, including the communities of Willowbrook and Bel Aire.
 
 
 3
 In Lathan v. Brinegar, supra, we have described the statutes, policy memoranda, and regulations in effect at various times during the planning of the portion of highway I-90 there involved. We do not repeat that description here. The following recital of what has been done about highway I-105 assumes familiarity with that description.
 
 
 4
 The state defendants divided the Century Freeway into two segments for the purpose of conducting corridor public hearings. Two hearings were held for each segment, the first conducted by the California Division of Highways and the second by the California Highway Commission. The two corridor hearings for the western segment of the freeway were held on June 5, 1963, and August 13, 1965, and the two hearings for the eastern segment were held on March 30, 1967, and April 16, 1968. Department of Transportation approval of the location of the western portion of the freeway was received on April 22, 1968, and approval of the location of the eastern portion was received on October 14, 1968.
 
 
 5
 The state defendants then divided the proposed freeway into eight segments for the purposes of planning the highway design, holding design hearings, and securing FHWA approval of their design proposals. One segment received FHWA design approval on August 14, 1968.[1] All of the highway design public hearings for the remaining seven segments were held after August 23, 1968, and were therefore subject to the amended version of section 128(a). In addition, three of the seven hearings were held after January 1, 1970, the effective date of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. 4321-4347.[2] Federal design approvals of seven of the eight segments were received after August 23, 1968, and five of the seven were received after September 1, 1970.[3]
 
 
 6
 No environmental impact statement (EIS) had been prepared for the freeway before February 16, 1972, when this action was filed. The district court ordered the defendants to prepare one, 352 F.Supp. at 1330-1336, and the defendants acquiesced. They have not appealed from this part of the district court's order and have informed this court that an EIS is being prepared.
 
 
 7
 As of April 24, 1972, the state had acquired, at a cost of over $88 million, 55.8% Of the right-of-way property for the freeway.[4] It is estimated that the total cost of the freeway will be $501,800,000. It is also estimated that 9,000 families, including 21,000 individuals, will be displaced, and that 3,900 single family dwellings and 3,000 multiple family dwellings will be acquired in order to clear the right-of-way. Thus the Century Freeway is further along in development than the I-90 freeway segment under consideration in Lathan v. Brinegar, supra. It is still true, however, that no PS&E approval has been sought or obtained, by no means all of the land in the corridor has been acquired and no construction has been undertaken.
 
 
 8
 The opinion of the district court, which embodies its findings of fact and conclusions of law, is reported in Keith v. Volpe, C.D.Cal., 1972, 352 F.Supp. 1324. The pertinent portions of the preliminary injunction entered are as follows:
 
 
 9
 '1. Defendants be and hereby are enjoined from any and all activities in furtherance of the Century Freeway, except for such activities as may be necessary for defendants to comply with this Preliminary Injunction and except for such activities that are specifically authorized by this Court pursuant to paragraph 3 of this Preliminary Injunction.
 
 
 10
 2. This Preliminary Injunction shall remain in effect until further order of this Court or until:
 
 
 11
 (c) state defendants certify to defendant Volpe that they have held, or provided the opportunity for, additional public hearings on the Century Freeway, which hearings shall focus on the effect of the freeway on air and noise pollution, in accordance with Section 128(a) of the Federal-Aid Highway Act, 23 U.S.C. 128(a), and PPM 20-8, 23 C.F.R. Part 1, Appendix A;'[5]
 
 
 12
 Under our decision in Lathan v. Brinegar, supra, it was proper for the court to condition lifting the injunction on a new hearing or hearings under section 128(a). Indeed, under that decision, his order could have been considerably more broad than it is. The appellees, however, have not cross-appealed, and thus the only question before us is whether the portion of the preliminary injunction that we have quoted should be reversed. Clearly, it should not.
 
 
 13
 We do not read the injunction as excluding other matters from consideration at the new section 128(a) hearing or hearings. For the reasons stated in our decision in Lathan v. Brinegar, supra, it should not. We also think that the EIS, now in preparation (perhaps, by now, actually prepared), should be available before and at, and considered at, the hearing or hearings.
 
 
 14
 Affirmed.
 
 CHAMBERS, Circuit Judge (concurring):
 
 15
 On the basis of my concurring opinion in Lathan v. Brinegar, 506 F.2d 695 (9 Cir. 1974), I concur in the result reached in this case. The information omitted was clearly relevant to the considerations in 23 C.F.R. 790.3(c)(6). The district court's findings that the considerations were of paramount importance and that almost no information was given on the subjects have not been shown to be clearly erroneous.
 
 WALLACE, Circuit Judge (dissenting):
 
 16
 I respectfully dissent.
 
 
 17
 The district court enjoined further highway action until the state holds new hearings complying with 23 U.S.C. 128(a). In effect, the district court has assumed that the state wants the highway and has, therefore, ordered new hearings.
 
 
 18
 The state has, as yet, submitted no plans to the secretary. For the reasons stated in my concurring opinion in Lathan v. Brinegar, 506 F.2d 677, 694 (9th Cir. 1974), I would hold that the judicial tampering with the hearing process was premature and that compliance with section 128(a) cannot be challenged in the courts until the state certifies to the secretary that the requisite hearings have been held.
 
 
 
 [1]
 The record does not indicate whether a highway design public hearing was held for that segment
 
 
 [2]
 The seven highway design public hearings were held on June 24, July 8, September 17 and October 15 of 1969 and January 28, April 22 and May 13, 1970. R.A. 426-28, 430-31
 
 
 [3]
 The eight highway design approvals were obtained on the following dates: August 14, 1968; September 10 and December 23, 1969; and February 12, April 14, July 2, December 1 and December 15, 1970. In addition, the design that was approved on September 10, 1969, was subsequently revised; the revisions received approval on December 23, 1970
 
 
 [4]
 If it should ultimately decide that the freeway should not be built, or that some or all of it should be relocated, that would not mean a loss of $88 million. Presumably, the state has received for this money real property having a fair market value of $88 million
 
 
 [5]
 PPM 20-8 has now been codified as 23 C.F.R. 790.1-790.11 (1973), with some modifications. Other provisions of the preliminary injunction have not been attacked on this appeal