## FRIENDS OF THE EARTH et al., Plaintiffs-Appellants,

v.

**William T. COLEMAN, Jr., Secretary U. S. Department of Transportation, Individually and in his official capacity, et al., Defendants-Appellees.**

### No. 74-2755.

United States Court of Appeals, Ninth Circuit.

March 10, 1975.

Thomas Zuckerman (argued), Stockton, Cal., for plaintiffs-appellants.

Elias D. Bardin, Asst. Chief Counsel (argued), Sacramento, Cal., for defendants-appellees.

OPINION

Before CHAMBERS and WRIGHT, Circuit Judges, and THOMPSON,* District Judge.

* Honorable Bruce R. Thompson, United States District Court Judge for the District of Nevada.

EUGENE A. WRIGHT, Circuit Judge:

Appellants are conservationists who sought in the district court injunctive and declaratory relief against the federal defendants for an alleged failure to comply with the requirements of the National Environmental Policy Act of 1969 (NEPA)[1] with reference to environmental impact statements. The project with which the appellants were concerned was the construction of a segment of Interstate Highway 5 (I–5) between Sacramento and Stockton, California. The state intervened through its Department of Transportation.

The district court found no genuine issues of material fact, held that the statement submitted for the project was sufficient as a matter of law, and granted summary judgment of dismissal. We affirm.

Appellants are two environmental organizations whose members regularly use the affected areas, and several individual users. Their challenge was directed not so much to the actual construction of the I–5 segment, as to appellees' decision to obtain fill for the project from the site of a Peripheral Canal, proposed as part of the California Water Project to transfer water from the upper Sacramento Valley to southern California.

Invitations for bids on the highway project from the California Division of Highways included specifications designed to implement the decision to coordinate excavation work on the two projects. By agreement with the State's Department of Water Resources, the Division required that the fill needed for the highway project be obtained from the canal site. The specifications also provided that any excavation to obtain

the fill conform to the approximate design dimensions and shape of the canal.

Appellants contend that the environmental impact statement (EIS) submitted for the highway project was inadequate because it failed to consider all reasonable alternative borrow sites for the fill. They also argue that the proposed excavations will constitute a commencement of the canal project sufficiently significant to warrant formal NEPA evaluation of the canal's environmental impact. Such an evaluation, they contend, must be made prior to any further construction work on the I–5 segment, either as part of a revised statement for the highway project, or as a separate statement dealing with the canal project alone.[2]

## I. CONSIDERATION OF ALTERNATIVE FILL SOURCE SITES.

■ This court has construed NEPA § 102(2)(C) as not requiring an agency to examine every conceivable alternative, but only those that are reasonable. Life of the Land v. Brinegar, 485 F.2d 460, 472 (9th Cir. 1973). It follows that an agency must consider those alternatives which are reasonable.

Appellants argue that the final EIS for the highway project failed to consider at least three reasonable alternative sites for obtaining the needed fill. In support of this contention, they refer to correspondence in the record indicating that state highway officials were aware of these alternatives, but concluded that they were not viable ones. That determination, appellants note, was sharply disputed in their own affidavits, which declared that "[r]easonable and viable alternatives to the proposed excavation exist." They assert that, at the very least, these contentions raised genu-

---

1. National Environmental Policy Act § 102(2)(C) [42 U.S.C. § 4332(2)(C) (1970)].

2. Appellants also argue that commencement of the canal excavation would constitute an unlawful expenditure of federal highway funds on a non-highway project without the explicit congressional authorization required by Section 101(d) of the Federal Highway Act [23 U.S.C. § 101(d) (1970)].

This contention can be quickly dismissed. Defendants presented uncontroverted evidence that using the canal site as a source of fill would result in a substantial saving of federal highway funds, since the state had already acquired substantial portions of the right of way for the proposed canal.

ine issues of material fact as to the reasonableness of the alternative sites, and that the summary dismissal of their action was therefore improper.

Fed.R.Civ.P. 56(e) provides that

"when a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial."

■ The showing of a "genuine issue for trial" is predicated upon "the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law." *McGuire v. Columbia Broadcasting System, Inc.*, 399 F.2d 902, 905 (9th Cir. 1968). Hence we must determine whether there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

■ The district court concluded that appellants had failed to introduce specific, evidentiary facts in support of their contention that the final EIS improperly failed to consider reasonable and viable alternative fill sites. We have read the affidavits and exhibits referred to by appellants, and cannot say that this determination was in error.

Counsel for appellants assure this court that they are experts qualified in their own right to assess the reasonableness of alternative fill source sites. However, even if we assume that their qualifications as affiants were properly presented below, we cannot agree that the bare conclusions of reasonableness contained in their affidavits sufficed as a matter of law to preclude summary judgment.

The highway officials who prepared the EIS presumably considered the alternative sites proposed by appellants unreasonable and unacceptable. In contrast, the final EIS did consider those alternative borrow sites thought to be viable ones, and concluded that the site chosen was not only economically preferable, but also less environmentally disruptive than any of the other possibilities. Absent the assertion of specific evidentiary facts, the district judge was not required to deny appellees' motion and take evidence on this issue.

Finally, it is contended that the EIS failed to consider the alternative of not completing the project, and thereby avoiding altogether the environmental disruption of the excavations. Appellants claim that the discussion of the environmental impact of the excavations was of the cursory type criticized in our recent decision in *Trout Unlimited v. Morton*, 509 F.2d 1276 (9th Cir., 1974).

In that case, this court upheld the determination that an EIS for a dam project was adequate. Nevertheless, we went on to caution those charged with preparing impact statements against too heavy a reliance on a conclusory form of presentation, lest the act's purpose of adequately informing the public of probable significant environmental impacts be undermined. *Id.* at 1283–1284.

As with the EIS at issue in *Trout Unlimited*, that before us is also somewhat conclusory in its discussion of the impact of the planned excavations. Nevertheless, we cannot agree that it was so conclusory as to require invalidation of the district court's finding of sufficiency.[3]

---

**3.** Appellants also contend that the district court applied the wrong standard in evaluating the EIS's sufficiency under NEPA. Although it is unclear from the record what standard of review the trial court ultimately determined to apply, at the time of its decision the appropriate standard in this circuit for testing the adequacy of an EIS was Administrative Procedure Act § 10(e)'s "abuse of discretion" test [5 U.S.C. § 706(2)(A) (1970)]. *See* Life of the Land v. Brinegar, 485 F.2d 460, 469 (9th Cir. 1973).

Our subsequent decision in Lathan v. Brinegar, 506 F.2d 677, 692–93 (9th Cir. 1974) (*en banc*), made it clear that the correct standard was instead to be found under § 706(2)(D),

We uphold the district court's determination that the EIS for the I–5 project adequately discussed those alternative borrow sites which were reasonably available, and adequately considered the environmental impact of the proposed excavations.

## II. CONSIDERATION OF THE PERIPHERAL CANAL'S ENVIRONMENTAL IMPACT.

Appellants concede the merit of any attempt to save public funds by interagency coordination and cooperation. They argue, however, that such cooperation cannot circumvent the clear intent of NEPA's EIS requirement that all ramifications of each proposed federal project "significantly affecting" the environment be considered at the earliest possible time prior to commencement of actual construction.

Nor, is it asserted, can linking commencement of an environmentally hazardous project to completion of an environmentally unobjectionable one be allowed to circumvent the EIS requirement for the former. Since the excavations proposed for the highway fill will also be part of the canal watercourse, they argue that the time for EIS consideration of both projects is now, before excavation commences.

■ As the district court properly noted, there are limits to the required scope of consideration of one project which may be remotely connected with, or have some effect upon, another. The proper test, we believe, does not depend upon the interrelation of the projects per se. Rather it depends upon whether completion of one project will inevitably involve

an "irreversible and irretrievable commitment of resources" to the second. NEPA § 102(2)(C)(v), 42 U.S.C. § 4332(2)(C)(v). *See* Scientists' Institute for Public Information v. AEC, 156 U.S. App.D.C. 395, 481 F.2d 1079 (1973), *noted in* 87 Harv.L.Rev. 1050, 1055–56 (1974).[4]

*Scientists' Institute*, the leading case analyzing NEPA's "irreversible commitment" language, held that an EIS had to be submitted prior to commencement of a massive research and development program for breeder reactors. The court looked to the nature of the contemplated "research and development" program, which involved test projects and massive expenditures for the development and improvement of nuclear energy technology. The court concluded that the decision to go ahead with the "R & D" phase of AEC's proposed program would also effectively commit the agency to that program's subsequent implementation phase. Given the long lead time generally associated with the development of energy resources, the decision to implement the program's first phase would in reality foreclose reliance upon alternative energy sources to satisfy additional demand for energy in the future.

■ Appellants contend that this case falls within the *Scientists' Institute* rationale. They claim that the cut and fill specifications of the highway project would involve excavation of one-third of the canal's watercourse.[5] Excavations of this magnitude would, they argue, seriously influence the decision in favor of completion of the remainder of the canal. Hence, unless environmental review of the canal project is had now, commitments will have been made by the time

which compels us to set aside agency actions found to be "without observance of procedure required by law." However, we have concluded that on the facts of this case, dismissal of appellants' action was correct under either test. *Compare* Environmental Defense Fund, Inc. v. Armstrong, 487 F.2d 814, 817 n. 7 (9th Cir. 1973).

4. This test is similar to that set out for successive implementation phases of the same project in Trout Unlimited v. Morton, 509 F.2d 1276, at 1285 (9th Cir. 1974).

5. Although appellees disputed appellants' characterization of the scope of the contemplated excavation, the district court was obliged to consider the facts in the light most favorable to the parties against which summary judgment was sought. Since we conclude that the EIS was adequate in any event, we need not consider whether this contention by appellants was subject to the same objection of inadequate factual allegation fatal to appellants' claims regarding consideration of alternative fill source sites.

the canal project comes up for formal approval which will make completion of the watercourse a foregone conclusion.

We are not convinced that any such consequences would necessarily follow. In the first place, the highway project EIS noted that contingent plans had been made for use of the excavation sites should the canal fail to be approved for any reason. Substantial evidence was submitted that the excavations could stand on their own as successful and useful fish hatcheries, and that conditional agreements had been reached by which they would be utilized as such.[6]

Secondly, even if the excavations are allowed to proceed, the public and Congress will have full opportunity to evaluate the wisdom of the contemplated water transfer scheme before it takes place. It is true that, should the canal project eventually be approved, construction would be able to proceed more economically and expeditiously because of the earlier decision to act in coordination with the highway project. But we do not believe that this brings the *Scientists' Institute* rationale into play. The resources committed to the canal project by the proposed highway fill excavations would have been spent on the highway project in any event. In fact, evidence was introduced that the canal site constituted the cheapest source of highway fill available.[7]

More importantly, since an EIS will be required before any work on the canal beyond the highway fill excavations can be done, requiring the statement now would serve no useful purpose, but would delay the highway project considerably. We are reluctant to accord to NEPA an interpretation which would have the sole effect of discouraging agency cooperation of the sort involved here.

While appellants may be correct that the presence of the excavations will most likely determine the path of the Peripheral Canal, if it is built, we do not find in this a sufficiently significant nexus to the highway excavations to warrant linking the two projects for EIS purposes. The environmental issues involved in carrying out the contemplated water transfer are likely to be of far greater significance than those concerning the route over which this transfer would occur.

Since the canal is to be only 43 miles long, with relatively fixed termini, there is little room for variation in the actual route chosen. *Cf.* Iowa Citizens for Environmental Quality, Inc. v. Volpe, 487 F.2d 849, 853 (8th Cir. 1973). And, as previously discussed, if any significant environmental advantage should appear in selecting a different route, the alternative use agreement with the California Department of Fish and Game would go into effect.

The construction of I–5 is nearing completion, after much time and great expense. The proposed 17-mile segment involved here will leave, when completed, only a 23-mile gap remaining before the California portion is complete. The massive nature of the commitments to I–5 already made afford additional support, we believe, to our decision to uphold the district court's refusal to countenance further delay. *Cf.* Citizens Environmental Council v. Volpe, 484 F.2d 870, 873 (10th Cir. 1973).

Hence we agree with the district court's conclusion that the highway and canal projects should stand by themselves for purposes of environmental review. *Cf.* Trout Unlimited v. Morton, *supra*, 509 F.2d at 1285. We uphold the district court's ruling that the highway project EIS satisfied § 102(2)(C), and affirm its order denying injunctive and declaratory relief.

**6.** This evidence was in a memorandum of understanding between the State Departments of Water Resources and Fish and Game. It committed the latter to converting the borrow sites into fish hatcheries if the canal project

had not received final approval within three years after excavation.

**7.** *See* note 2 *supra.*