The CONSERVATION SOCIETY OF SOUTHERN VERMONT, INC., et al., Appellees,

v.

SECRETARY OF TRANSPORTATION, et al., Appellants.

Nos. 63, 288, Dockets 73–2629, 73–2715.

United States Court of Appeals, Second Circuit.

Submitted Dec. 10, 1975.

Decided Feb. 18, 1976.

5. *Supra*, n.3.

**638**

Harvey D. Carter, Jr., Bennington, Vt. (Williams, Witten, Carter & Wickes, Bennington, Vt.), for appellees.

Robert C. Schwartz, Asst. Atty. Gen. Vt., Montpelier, Vt., Walter Kiechel, Jr., Acting Asst. Atty. Gen., Edmund B. Clark, Kathryn A. Oberly, Attys., Dept. of Justice, Washington, D. C., for appellants.

Sarah Chasis, New York City, of counsel, for amici curiae Natural Resources Defense Council, Inc.

Arthur J. O'Dea, Manchester, Vt., for amicus curiae, Town of Manchester.

* Of the Third Circuit Court of Appeals, sitting by designation.

1. "Any detailed statement required under subparagraph (C) after January 1, 1970, for any major Federal action funded under a program

Before MOORE, MULLIGAN and ADAMS,* Circuit Judges.

PER CURIAM:

On December 11, 1974 this court rendered its opinion in *Conservation Society of Southern Vermont, Inc. v. Secretary of Transportation,* 2 Cir., 508 F.2d 927, which affirmed a judgment of the District Court of Vermont reported in 362 F.Supp. 627 (1973). The Solicitor General petitioned for and was granted a writ of certiorari. On October 6, 1975, this court's prior judgment was vacated and the case was remanded for further consideration in light of Public Law 94–83 and *Aberdeen & Rockfish R. R. v. SCRAP,* 422 U.S. 289, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975). 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29. The reported opinions fully set forth the facts involved in this litigation and they will not be repeated here except as relevant to the remand.

In *Conservation Society of Southern Vermont v. Secretary of Transportation, supra,* this court reaffirmed the rule it announced in *Greene County Planning Board v. FPC,* 2 Cir., 455 F.2d 412, cert. denied, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972) which required that an Environmental Impact Statement (EIS) sufficient to comply with the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. (NEPA) had to be prepared by the responsible federal agency and not by a state agency. As a result of this decision, the Federal Highway Administration (FHWA) initially ordered an almost total halt to all federally funded highway projects in the three states of this Circuit, and the states themselves have refrained from committing additional funds until the issue was finally decided. In response to our decision in *Conservation Society,* the Congress enacted Public Law No. 94–83 which added a new section 102(2)(D) to NEPA.[1]

of grants to States shall not be deemed to be legally insufficient solely by reason of having been prepared by a State agency or official, if:

"(i) the State agency or official has statewide jurisdiction and has the responsibility for such action,

The legislative history of the enactment makes it clear that the Congress intended to overturn our decision in *Conservation Society.* 1975 U.S.Code Cong. & Admin. News 1797, quoting from Senate Rep. 94–52 at 2. Indeed in the District Court Judge Oakes had earlier suggested that delegation of authority to prepare the EIS to the responsible state agency was an issue that should be taken to Congress. 362 F.Supp. at 631. Under the law as amended the state agency may prepare the EIS provided the federal agency "furnishes guidance and participates in such preparation" and provided "the responsible Federal official independently evaluates such statement prior to its approval and adoption." Judge Oakes's findings in the District Court establish that the appropriate federal official "maintained frequent contact" with state officials in the preparation of the EIS, and was in verbal communication two or three times weekly with the state official primarily responsible for the preparation of the EIS; the FHWA division engineer undertook a field trip to examine the proposed route, during which environmental considerations were noted and discussed. 362 F.Supp. at 629. Although the state agency prepared the EIS it was in consultation with FHWA; the draft was submitted to FHWA at its offices in both Vermont and New York. Id. at 630. It was reviewed by the FHWA regional office, the division office, the federal planning engineer and the federal area engineer; it was circulated by the regional of-

fice to an interdisciplinary task force which made three suggestions, all of which were incorporated in the final EIS. The District Court concluded that the EIS was prepared by the local state agency "with communication from and cooperation of the regional FHWA, followed by review by an FHWA 'task force' at the regional level . . . ." Id. at 630.

These findings have not been appealed and we conclude that there was compliance with the procedural requirements of Public Law No. 94–83. In our prior opinion we noted that "the district court found that substantively the EIS was adequate. There is no appeal from this aspect of the district court opinion." 508 F.2d at 929 n. 6.[2]

We also affirmed the holding of the district court that an EIS be prepared for the entire 280-mile length of Route 7 even though no plan then existed for constructing the superhighway through Connecticut, Massachusetts and Vermont. 508 F.2d at 934–36. The Supreme Court remand here cites *SCRAP, supra,* which holds that a federal agency *must* prepare its EIS at "the time at which it makes a recommendation or report on a *proposal* for federal action." 422 U.S. at 320, 95 S.Ct. at 2356, 45 L.Ed.2d 215 (emphasis in original). Here the findings of the district court were that, although federal officials had knowledge of the overall planning process of state officials, there was "no overall federal plan" for improving the corridor into a superhigh-

"(ii) the responsible Federal official furnishes guidance and participates in such preparation,

"(iii) the responsible Federal official independently evaluates such statement prior to its approval and adoption, and

"(iv) after January 1, 1976, the responsible Federal official provides early notification to, and solicits the views of, any other State or any Federal land management entity of any action or any alternative thereto which may have significant impacts upon such State or affected Federal land management entity and, if there is any disagreement on such impacts, prepares a written assessment of such impacts and views for incorporation into such detailed statement.

The procedures in this subparagraph shall not relieve the Federal official of his responsibil-

ities for the scope, objectivity, and content of the entire statement or of any other responsibility under this chapter; and further, this subparagraph does not affect the legal sufficiency of statements prepared by State agencies with less than statewide jurisdiction."

2. We point this out since appellees argue that FHWA evaluation was pro forma because the EIS was substantively deficient. They also mention that despite the findings of the district court which we have noted, that court characterized the final comments of FHWA as "perfunctory" and a "rubber stamp." 362 F.Supp. at 631. We note however that the court was applying the strict non-delegation rule of *Greene County, supra,* now rejected by congressional action.

way. 362 F.Supp. at 636. The federal action being taken here relates only to the twenty-mile stretch between Bennington and Manchester in Vermont. The stretch is "admittedly a project with local utility," 508 F.2d at 935. Hence we see no irreversible or irretrievable commitment of federal funds for the entire corridor and under *SCRAP* no obligation for a corridor EIS. See *Friends of the Earth v. Coleman,* 513 F.2d 295, 299–300 (9th Cir. 1975); *Trout Unlimited v. Morton,* 509 F.2d 1276, 1283–85 (9th Cir. 1974).

In light of the remand and this discussion, we reverse our prior decision and reverse the judgment of the district court.

ADAMS, Circuit Judge (dissenting in part):

There can be no doubt that the Court's previous decision in this matter (*Conservation Society I*)[1] was the impetus for the congressional action that resulted in the addition of a new section 102(2)(D) to the National Environmental Policy Act (NEPA).[2] But my understanding of the intent of the Congress, as it is expressed in the amendatory language and illuminated by the legislative history, diverges from that of the majority. In my view, the legislative purpose was to modify and clarify the rigid standard that Congress perceived *Conservation Society I* had established for federal involvement in the preparation and drafting of the environmental impact statement (EIS). The intent was not simply to overturn that ruling or to repudiate altogether the requirement of substantial federal control of the EIS. Be-

cause it is clear that the degree of federal control mandated by the modified statute has not been exercised in this case, I respectfully dissent from that portion of the majority opinion addressing the effect of the amendment to NEPA.

The roots of the question now before the Court find their grounding in *Greene County.*[3] Construing the requirement of NEPA that an EIS be prepared "by the responsible federal official,"[4] this Court there held that the statute prohibited the federal agency from delegating to a state agency the duty to prepare and draft the EIS. A major risk of such a procedure, specifically mentioned by the *Greene County* Court, is that the state agency's own interest in completion of the project in question might result in a biased EIS, one "based upon self-serving assumptions."[5]

Notwithstanding the refusal of five other courts of appeals to follow the *Greene County* rule,[6] this Court adhered to it when the issue was again presented in *Conservation Society I.*[7] The lack of objectivity that might result from permitting the state agency to prepare the EIS was again put forward as one of the bases for the Court's decision.[8]

In response to *Conservation Society I,* Congress amended NEPA by adding a new section 102(2)(D). It provides that an EIS shall not be deemed insufficient solely because it was prepared by a state agency if "the responsible Federal official furnishes guidance and participates in such preparation [and] . . . independently evaluates such statement prior to its approval and adoption . . . ."[9] The Supreme

---

1. *Conservation Society v. Secretary of Transportation,* 508 F.2d 927 (2d Cir. 1974).

2. Act of Aug. 9, 1975, Pub.L.No.94–83, 89 Stat. 424.

3. *Greene County Planning Bd. v. FPC,* 455 F.2d 412 (2d Cir.), *cert. denied,* 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972).

4. NEPA § 102(2)(C), 42 U.S.C. § 4332(2)(C) (1970).

5. 455 F.2d at 420 (footnote omitted).

6. *See* 508 F.2d at 929 n. 3.

7. Since the date of that decision, two other federal courts have adopted the *Greene County* rule. *Swain v. Brinegar,* 517 F.2d 766, 778–79 (7th Cir. 1975); *Appalachian Mountain Club v. Brinegar,* 394 F.Supp. 105, 120–21 (D.N.H. 1975). *See also I–291 Why? Ass'n v. Burns,* 517 F.2d 1077, 1081 (2d Cir. 1975) (per curiam).

8. 508 F.2d at 931–32.

9. NEPA § 102(2)(D)(ii), (iii), Act of Aug. 9, 1975, Pub.L.No.94–83, 89 Stat. 424. Other aspects of the amendment are not relevant to the question before the Court.

Court's order vacating our prior judgment and remanding the case [10] places the meaning of the amendment to NEPA squarely before us.

### A.

My analysis begins with the particular language Congress employed to amend NEPA. The amendment concerns only the preparation of the EIS; it does not affect the requirement of section 102(2)(C) of NEPA that the EIS be formally adopted by the federal official. It appears to permit an EIS to be prepared by a state agency if the federal agency discharges three specific responsibilities. The federal agency must (1) furnish guidance in the preparation of the EIS, (2) participate in the preparation of the EIS, and (3) independently evaluate the EIS prepared by the state agency before approving and adopting it. These three requirements indicate that the federal agency must remain involved in a substantial way both during and after the state agency's preparation of the EIS. To the same end, the amendment includes the statement that "[t]he procedures in this subparagraph shall not relieve the Federal official of his responsibilities for the scope, objectivity, and content of the entire [EIS] or of any other responsibility under [NEPA]. . .."

To the extent that *Greene County* and *Conservation Society I* place an absolute prohibition upon delegation to the state agency of responsibilities to prepare the EIS, they have now been overruled by Congress. But my understanding of the congressional language is that a continuing and vital role by the federal agency in the preparation of the EIS is still contemplated.

### B.

The meaning of the amendment is further clarified by a review of its legislative history. The Supreme Court has admonished that it is essential for courts to "place the words of a statute in their proper context by resort to the legislative history," [11] since such history "illuminates the meaning of acts, as context does that of words." [12] The content of the extensive floor debates and of the reports submitted to the two chambers of Congress by their respective committees reinforces the conclusion that the statutory language itself requires major federal involvement in the preparation of the EIS.

Because committee reports are entitled to greater weight in statutory construction than are discussions on the floor of the Senate or the House,[13] initial reference to the reports written in connection with the amendment to NEPA would appear to be in order.

The report of the House Committee on Merchant Marine and Fisheries was the first one dealing with the matter.[14] The Committee reported favorably on H.R. 3130, the bill which was ultimately enacted.[15] At the same time, it recommended against passage of H.R. 3787,[16] a bill that had also been introduced in response to *Conservation Society I*. The report specifically accompanied only H.R. 3130 to the floor, although it also made references to H.R. 3787.

As reported out of Committee, H.R. 3130 had provisions virtually identical to those now contained in section 102(2)(D) of NEPA. "The purpose of the bill," the Committee wrote, "is to *clarify* the application" of NEPA to projects in which the state

---

**10.** 44 U.S.L.W. 3199 (U.S. Oct. 6, 1975).

**11.** *Tidewater Oil Co. v. United States,* 409 U.S. 151, 157, 93 S.Ct. 408, 413, 34 L.Ed.2d 375, 383 (1972).

**12.** *Cramer v. United States,* 325 U.S. 1, 33, 65 S.Ct. 918, 934, 89 L.Ed. 1441, 1460 (1945).

**13.** *United States v. United Auto Workers,* 352 U.S. 567, 585, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957).

**14.** H.R.Rep.No.144, 94th Cong., 1st Sess. (1975) [hereinafter cited as House Report].

**15.** *Id.* 1.

**16.** *Id.* 2–3.

agency has prepared the EIS.[17] The Committee's understanding of the critical phrase "furnishes guidance and participates in" was that it demonstrates an intent to "re-emphasize the basic precept of NEPA that Federal officials consider the environmental ramifications of proposed federal actions."[18] In the committee's view, federal participation both extensive and effective is required in the drafting of the EIS.[19] The phrase "independently evaluates" is "intended to assure that the Federal agency consider, critically review and, when appropriate, change and supplement" the work done by the state agency.[20] This analysis of the bill's provisions led the Committee to the conclusion that the bill would not disturb the "basic logic" of *Greene County*[21] —that delegation must be sufficiently limited to maintain federal accountability for decisions that affect the environment.

Summarizing its understanding of the bill, the House Committee used the following forceful language:

> [The bill] does not sanction a "rubber stamp" approach to Federal responsibilities, nor does it allow Federal functionaries to sidestep the other responsibilities placed upon them by law including, but not limited to, NEPA. What it does is to encourage adequate inputs of information by those best suited to develop that information, and to ensure that a continuing federal presence is mandated to fit that information into a rational and realistic planning and decision-making process. If enacted, H.R. 3130 would have this, *and only this* effect.[22]

The Senate Committee on Interior and Insular Affairs issued a report that made the same recommendations as the House Report.[23] The Senate Committee considered the purpose of H.R. 3130 to be the remedying of "administrative difficulties arising from" *Conservation Society I.*[24] The major administrative difficulty identified in the report is "the extent of permissible delegation of EIS preparation duties by the Federal agencies . . . ."[25] Nowhere in the report is it suggested that total, or even major delegation to state agencies be allowed; on the contrary, the importance of a continuing federal role is emphasized throughout.

Express approval was given by the Senate Committee to the language of the House Report rejecting the notion that the bill allowed a "rubber stamp" approach to the responsibilities of the federal agency.[26] Emphasizing the importance of the role of the federal agency in the preparation of the EIS, the committee concluded that "[t]he involvement of the Federal official should come early and at every critical stage in the preparation of the EIS, and should be substantial and continuous."[27]

Both the House Report and the Senate Report thus make clear the congressional intent to retain a considerable, though not exclusive, federal role in the development of the EIS.

Consideration of language offered to a congressional committee in the form of a bill, but rejected by the committee, often gives further insight into the meaning of the legislation actually enacted.[28] For that

17. *Id.* 1–2 (emphasis added). The same view was expressed throughout the report. *See, e. g., id.* 4.

18. *Id.* 4–5.

19. *Id.* 5.

20. *Id.*

21. *Id.* 6.

22. *Id.* (emphasis in original).

23. S.Rep.No.152, 94th Cong., 1st Sess. (1975) [hereinafter cited as Senate Report].

24. *Id.* 2.

25. *Id.* 3.

26. *Id.* 10, *quoting with approval* House Report 6.

27. *Id.*

28. *See Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 200, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974).

reason, the response of the committees to H.R. 3787, which "died" in the Senate committee, is worthy of analysis. H.R. 3787 was a proposed amendment to the Federal Aid Highway Act, and would have modified it by permitting an EIS to be prepared by the state agency if it were adopted by federal officials "after analysis and evaluation." Significantly, H.R. 3787 was limited in application—functionally, to federal aid highway projects, and geographically, to the three states of the Second Circuit.[29]

Primarily because of these two restrictions in the bill, it stayed in committee in the Senate and never came to a vote on the Senate floor.[30] But another of the reasons for the Senate Committee's decision not to report the bill out is even more important to the meaning of the bill that was in fact enacted and which is before the Court today. The Committee believed that "one reading of H.R. 3787 is that it permits virtual total delegation of EIS requirements to the states . . .. [T]his degree of delegation is contrary to NEPA's most basic purpose of providing Federal accountability for the environment. . . H.R. 3130 does not suffer from the same ambiguity, [and] would clearly not sanction such complete delegation. . . ."[31] The Committee's reasoning is a further indication of the desire on the part of Congress to maintain substantial federal control over the EIS.

The Senate debates on H.R. 3130 provide little aid in interpreting the bill. But the House debates indicate support by members from both sides of the aisle for retention of a strong federal role in the EIS, albeit with a modification of the standard that some Congressmen read in *Conservation Society I*. The author of H.R. 3130 specifically expressed a belief that the federal agency "must retain a large degree of the responsibility for the objectivity and completeness" of the EIS. In his mind, "close federal supervision . . . is crucial."[32] The chairman of the subcommittee that had first considered H.R. 3130 and the ranking minority member of the Committee observed that delegation of EIS responsibilities was contemplated by the bill only if accompanied by a full, independent evaluation of environmental factors by the federal agency.[33] Another minority member of the Committee explained to his colleagues that the bill was designed to clear up the ambiguity over whether the Court in *Conservation Society I* had held that the federal agency must do all the work in preparing the EIS, or had held only that preparation by the state agency is permissible if the federal agency evaluates the environmental factors independently. Enactment of the bill would demonstrate that Congress adopted the latter interpretation, he stated, and would emphasize the requirement that the federal agency conduct its own independent evaluation of the information supplied by the state agency.[34]

A reading of the debates and the two committee reports uniformly reinforces my understanding of the already unambiguous

**29.** Senate Report 5.

**30.** *Id.* 7. The House Committee on Merchant Marine and Fisheries rejected the bill for the same reason. House Report 2–4. The floor debates also demonstrate the concern for the problem. 121 Cong.Rec. H 2996 (remarks of Mr. Shuster), H 2999, H 3002 (remarks of Mr. Leggett), H 3003–04 *(remarks of Mrs. Sullivan)*, H 3004 (remarks of Mr. Forsythe), H 3005 (remarks of Mr. LaFalce) (April 21, 1975). Nonetheless, H.R. 3787 passed the House on April 21, 1975, by a vote of 275–99. *Id.* H 3009.

**31.** Senate Report 8.

**32.** 121 Cong.Rec. H 3006 (remarks of Mr. LaFalce) (April 21, 1975).

**33.** *Id.* H 3007 (remarks of Mr. Leggett), H 3004 (remarks of Mr. Ruppe).

**34.** *Id.* H 3004 (remarks of Mr. Forsythe). Similarly, the Chairman of the Committee stated on the floor that the bill dealt only with the *extent* of delegation to be permitted. *Id.* H 3003 (remarks of Mrs. Sullivan). The continuing importance of the federal role under the terms of H.R. 3130 was also emphasized by Russell W. Peterson, the Chairman of the Council on Environmental Quality, *in a statement delivered* before the Senate Committee. Senate Report 16.

statutory language.[35] By Public Law 94–83, Congress has now acted to allow the state agency to prepare the EIS under certain circumstances. But it has imposed a strict requirement of federal control in the process. The federal agency, according to the Congressional mandate, must guide the state agency during the preparation of the EIS. The federal agency must actively participate in that preparation. And the federal agency must review and evaluate the EIS independently, meeting its own responsibility to be fully accountable for the environmental ramifications of the proposed project. These are not duties that are fulfilled easily, or without substantial effort, input, and understanding. Congress has rejected the idea that the federal agency must perform all the work involved in preparing the EIS, but it has reaffirmed the principle that ultimate control must rest in federal hands.

### C.

It is that set of conclusions, derived from a review of the legislation and its history, which in all deference leads me to a judgment different from that of the majority. I conclude that the federal involvement in the Route 7 EIS, as described in the factual findings made by the district court,[36] was inadequate even under the modified statutory provisions.

Among others, the following findings were made by the district court: (1) Arthur Goss, a planning engineer with the Vermont Highway Department (VHD), was the person "primarily responsible for the writing and preparation of the EIS . .."[37] (2) "[A] draft EIS was prepared by the VHD in consultation with but not under the supervision of" the Federal Highway Administration (FHWA).[38] (3) The draft EIS was "examined" and "considered" by FHWA of-

ficials. These officials made three suggestions regarding the draft, one of which concerned the environment.[39] (4) "There is no indication whatsoever that the FHWA or any of its employees conceived, wrote or even edited any section of or passage in the EIS. At the most there were informal chats touching upon the subject, together with [one] field trip [to the site of the proposed project] and subsequent 'review.'"[40]

When faced with this factual record, I cannot conclude that the standard for federal involvement contained in the amendment to NEPA has been met. The FHWA did not guide VHD in the preparation of the EIS. It did not actively participate in the preparation of the EIS. There is no evidence that the FHWA's review of the draft EIS written by the VHD was an independent and critical evaluation of the environmental considerations inhering in the Route 7 project. The federal role was not, in my mind, the substantial one envisioned by Congress.

I would therefore affirm that portion of the district court's judgment which concerns the degree of federal involvement that NEPA requires in the preparation of the EIS, or, at most, remand the cause for further analysis by the district court in light of the amendment to NEPA.

---

**35.** *Cf.* Justice Frankfurter's reference to "the wag who said, when the legislative history is doubtful go to the statute." *Greenwood v. United States,* 350 U.S. 366, 374, 76 S.Ct. 410, 415, 100 L.Ed. 412, 419 (1956).

**36.** The findings of fact are not challenged here.

**37.** *Conservation Society v. Secretary of Transportation,* 362 F.Supp. 627, 629 (D.Vt.1973).

**38.** *Id.* at 629–30.

**39.** *Id.* at 630 & n. 1.

**40.** *Id.* at 632.