**FRED W. SMITH, INC.**

v.

**James BURNLEY, in his capacity as Secretary of Transportation of the United States of America; Gordon G. Hoxie, in his capacity as Division Administrator of the Federal Highway Administration; Rhode Island Department of Transportation and Matthew Gill, in his capacity as Director of the Department of Transportation.**

**Civ. A. No. 88–0435 L.**

United States District Court, D. Rhode Island.

March 30, 1990.

Maureen McKenna Goldberg, Pawtucket, R.I., for plaintiff.

Everett Sammartino, Suzanne Kurt, Asst. U.S. Attys., F. Thomas O'Halloran, Sp. Counsel, Providence, R.I., for defendants.

#### MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is presently before the Court on the motion of each defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The instant action arises as a result of a proposed highway alteration project to an area known as the "Wakefield cutoff", located at the intersection of U.S. Route 1 and Old Tower Hill Road in the town of South Kingstown, Rhode Island. The proposed highway alteration at issue in this case is a Federal-aid highway project which involves the bypassing of, or going through, a city, town, or village and therefore is subject to 23 U.S.C. § 128 which requires that

Any State highway department which submits plans for a Federal-aid highway project involving the bypassing of, or going through, any city, town, or village, either incorporated or unincorporated, shall certify to the Secretary that it has had public hearings, or has afforded the opportunity for such hearings, and has considered the economic and social effects of such a location, its impact on the environment, and its consistency with the goals and objectives of such urban planning as has been promulgated by the community. . . .

23 U.S.C. § 128(a) (Supp.1989).

Plaintiff, Fred W. Smith, Inc., is a Rhode Island corporation located on Old Tower Hill Road in Wakefield, Rhode Island and engaged in the business of selling automobiles. Defendants are the Rhode Island Department of Transportation (RIDOT) and Matthew Gill, in his capacity as Director of RIDOT (State defendants), and James Burnley, in his capacity as Secretary of Transportation of the United States of America and Gordon G. Hoxie, in his capacity as Division Administrator of the Federal Highway Administration (Federal defendants). Prior to the filing of this action, the State defendants notified plaintiff that a portion of its property along Old Tower Hill Road would be condemned for highway purposes. Plaintiff alleges in this case that the condemnation involves a significant amount of its frontage property including one-third of its display space.

The basis of plaintiff's complaint in this action is that the State defendants have failed to conduct a proper public hearing regarding the Wakefield cutoff project in accordance with 23 U.S.C. § 128(a). In addition, plaintiff alleges that the State defendants have not considered the economic, social and environmental effects of the proposed project as required by § 128. Because of the alleged failure of the State defendants to comply with federal law, plaintiff seeks to enjoin the Federal defendants from contributing and the State defendants from receiving federal funding for the proposed highway project.

In its original complaint, plaintiff was seeking an injunction to prevent the State defendants from receiving any federal funds for the Wakefield cutoff project and from continuing with the project until a public hearing was held or the opportunity for such a hearing was provided. After this Court denied plaintiff's motion for a preliminary injunction on August 30, 1988, RIDOT conducted a public hearing at the South Kingstown High School on April 4, 1989. Plaintiff subsequently filed its Second Amended Complaint seeking additional relief in the form of a declaratory judgment stating that the hearing held on April 4, 1989 was invalid and not in accordance with 23 U.S.C. § 128 and injunctive relief to prevent defendant Gordon G. Hoxie, in his capacity as Division Administrator of the Federal Highway Administration, from expending federal funds for the Wakefield cutoff project.

Both the State and Federal defendants have moved for summary judgment on two grounds. First, defendants assert that they have fully complied with all the requirements imposed by 23 U.S.C. § 128 and the rules promulgated thereunder. In addition, defendants contend that even if they have not fully complied with the federal law, plaintiff is not entitled to injunctive relief because it has an adequate remedy at law to recover damages for the condemnation of its property.

The Court, after having heard arguments on the motions for summary judgment, took the matter under advisement. The motions are now in order for decision.

BACKGROUND

The site of the proposed highway project which is the subject of this case, the Wake-

field cutoff, is the intersection of U.S. Route 1 and Old Tower Hill Road in the town of South Kingstown, Rhode Island. The site is a half mile northeast of the village of Wakefield, the town's commercial center and an area of dense residential development. Old Tower Hill Road leads directly from Route 1 through the Wakefield shopping district.

Due to its particular configuration, the Wakefield cutoff has been the site of one of the highest number of traffic accidents in the state. The town and RIDOT have been concerned with improving the safety of this intersection for many years and the site was the subject of several transportation and planning studies conducted during the 1970s. The current plan for improvements to the Wakefield cutoff was developed as a result of a design study funded by the Federal Highway Administration (FHA) and performed for RIDOT by the Pare Engineering Corporation (Pare). The corridor/design study developed a number of alternative configurations for the Wakefield cutoff and selected as the best alternative a project involving a diamond interchange with a two-way extension of Old Tower Hill Road overpassing Route 1.

The Corridor/Design Study Report and Environmental Assessment prepared by Pare contains a complete explanation of the safety issues and traffic problems addressed by the recommended plan for improvements to the Wakefield cutoff. The report also contains detailed information on traffic considerations including traffic volumes, capacity analysis and accident analysis. The Corridor/Design Study Report outlines the design goals and standards used in developing the recommended solution for making improvements to the Wakefield cutoff and sets forth all of the alternatives that were developed in response to the problem along with an evaluation of each. In addition, the Report analyzes the socio-economic, historic and environmental impacts of each alternative. Finally, the appendix to the Corridor/Design Study Report contains, *inter alia*, a complete environmental assessment report regarding the Wakefield cutoff project.

The extent of the public participation in the development of the plans for the Wakefield cutoff project was as follows. The initial coordination effort undertaken for the project was in the form of "first round meetings" with public agencies, local officials and citizens' groups. The purpose of the meetings was to inform the officials and the public of the studies being conducted, as well as to solicit comments and input regarding the proposed improvements to the Wakefield cutoff. At the conclusion of the first round meetings, the recommended plan and feasible alternatives for the project were developed. These plans and alternatives were then presented to the local officials, public agencies and private groups to offer them another chance to comment and make suggestions.

On March 28, 1984, a public workshop was held regarding the Wakefield cutoff project. A notice advertising the workshop was published in two newspapers on March 8, 1984. The purpose of the workshop was to display details of the recommended alternative for the highway project and to afford residents and interested parties an opportunity to discuss and comment on its impacts. The Draft Corridor/Design Study Report and Environmental Assessment was available at the workshop for inspection and a form was provided for anyone who wished to make additional written comments regarding said project.

On May 10, 1984, an advertisement was published in the Providence Journal, the Evening Bulletin and the Narragansett Times giving notice of the availability of a public hearing regarding the proposed improvements to the Wakefield cutoff. There were two responses to the advertisement, neither of which was a request for a public hearing. A public hearing, therefore, was not held at that time.

Finally, on April 4, 1989, a public hearing was held at the South Kingstown Senior High School.[1] Notices advertising the hearing were published on February 21, 1989 and on March 21, 1989 in both the

1. Plaintiff denies that this event was a "public hearing" but admits that the meeting took place.

Providence Journal and Narragansett Times. During the first part of the hearing, representatives from RIDOT and Pare spoke about the plans for the Wakefield cutoff project. Members of the public were then allowed five minutes each to state whatever concerns they had regarding the project and forms were available for those desiring to make written comments. Although the representatives of the State did not respond to any questions or comments during the course of the public hearing, the entire proceeding was recorded and each question was answered in writing by RIDOT. All comments, both oral and written, and the corresponding responses were documented and incorporated into the final Corridor/Design Study Report.

## DISCUSSION

The law is well settled that summary judgment will be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). In the case *sub judice,* plaintiff asserts that the State defendants should be enjoined from receiving federal funding for the Wakefield cutoff highway project because they have failed to comply with the federal statutory requirements set forth in 23 U.S.C. § 128 and 23 C.F.R. § 790 *et seq.*[2] Although plaintiff originally sought to prevent the State defendants from going forward with this project, it made clear in its oral argument with respect to the motion for summary judgment that it is now seeking only an injunction to prohibit the Federal defendants from giving and the State defendants from receiving federal monies for the project in ques-

tion. Thus, the central issues before the Court are twofold: (1) Have the State defendants complied with the requirements set forth in 23 U.S.C. § 128 and 23 C.F.R. § 790 *et seq?* and (2) if not, is plaintiff entitled to injunctive relief to prevent the Federal defendants from expending and the State defendants from receiving federal funding for the project?

After careful consideration of the undisputed facts, this Court concludes that the State defendants have complied with the federal statutory requirements of 23 U.S.C. § 128 and 23 C.F.R. § 790 *et seq.* In addition, the Court concludes that even if the State defendants had not met the standards delineated by the federal law, plaintiff is not entitled to injunctive relief because it will not suffer irreparable harm if the injunction is denied.

### A. *Compliance with 23 U.S.C. § 128*

■ At the heart of plaintiff's complaint in this case is the contention that the State defendants have not provided adequate opportunity for meaningful public participation in the planning and development of the proposal for improvements to the Wakefield cutoff. Section 128(a) of Title 23 of the United States Code requires that in order to receive funding for a Federal-aid highway project, the state highway department must certify that it has had public hearings or has afforded the opportunity for such hearings. The specific guidelines outlining the requirements and procedures for conducting the public hearings are set forth in 23 C.F.R. § 790 *et seq.* The State defendants maintain that the Wakefield cutoff project fits within the parameters of 23 C.F.R. § 790.5(c) and therefore does not require a public hearing.[3] They

---

**2.** 23 C.F.R. § 790 *et seq.* has been repealed and is currently superseded by 23 C.F.R. § 771 *et seq.* However, because the planning for the Wakefield cutoff project commenced when § 790 was still in effect, the Court determines that 23 C.F.R. § 790 *et seq.* should be the controlling law in this case.

**3.** 23 C.F.R. § 790.5(c) (1987) states
(c) Hearings are not required for those projects that are solely for such improvements as resurfacing, widening existing lanes, add-

ing auxiliary lanes, replacing existing grade separation structures, installing traffic control devices or similar improvements, unless the project:
(1) Requires the acquisition of additional right-of-way; or
(2) Would have an adverse effect upon abutting real property; or
(3) Would change the layout or function of connecting roads or streets or of the facility being improved.

also assert that even if they were required to provide an opportunity for a public hearing, they provided such an opportunity by publishing notification of the Public Information Workshop held in March of 1984 in two newspapers and then advertising the availability of a public hearing regarding the Wakefield cutoff project in two newspapers on May 10, 1984. Finally, the State defendants claim that the public hearing held in April of 1989 satisfied any unfulfilled requirements under the federal law. Because this Court finds that the State defendants fully complied with the public hearing requirements of 23 U.S.C. § 128 by holding a public hearing in April of 1989, it need not determine whether they provided an adequate opportunity for a public hearing in 1984.

In its Second Amended Complaint, plaintiff asserts that the hearing conducted on April 4, 1989 did not comply with 23 U.S.C. § 128 because it was not held at a time when public comment was meaningful. In addition, plaintiff argues in its memorandum in opposition to the motions for summary judgment that the notice of the design hearing was not sufficient to meet the requirements of 23 C.F.R. § 790.7.

The federal regulations adopted in conjunction with 23 U.S.C. § 128 provide that:

A "highway design public hearing" is a public hearing that: (1) Is held after the route location has been approved, but before the State highway department is committed to a specific design proposal. (2) Is held to ensure that an opportunity is afforded for effective participation by interested persons in the process of determining the specific location and major design features of a Federal-aid highway; and (3) Provides a public forum that affords a full opportunity for presenting views on major highway design features, including the social, economic, environmental, and other effects of alternate designs.

23 C.F.R. § 790.3(b) (1987). The rules, policies and procedures established by 23 C.F.R. § 790 *et seq.* were intended to "afford full opportunity for effective public participation in the consideration of high-

way location and design proposals by highway departments before submission to the Federal Highway Administration." 23 C.F.R. § 790.1(a) (1987). In addition, the procedures regarding public hearings were designed ". . . to give all interested persons an opportunity to become fully acquainted with highway proposals of concern to them and to express their views *at those stages of a proposal's development when the flexibility to respond to these views still exists.*" 23 C.F.R. § 790.1(b) (1987) (emphasis added).

It is undisputed that a hearing was held regarding the Wakefield cutoff highway project on April 4, 1989. Plaintiff maintains, however, that the hearing did not fulfill the requirements of 23 U.S.C. § 128 because the project was 100% complete by that time and in fact had already been submitted for final approval to FHA. Thus, plaintiff contends that by April of 1989 the state highway department was committed to a specific design proposal and had already denied the public the right to express their views at those stages of the proposal's development when the flexibility to respond to those views still existed.

The sufficiency of the hearing held on April 4, 1989 is a question of fact for the Court to determine. *Coalition of Concerned Citizens Against I-670 v. Damian,* 608 F.Supp. 110, 125 (S.D.Ohio 1984) (citation omitted). The actions of the defendants, however, are entitled to a presumption of regularity, and the burden is upon the plaintiffs to establish illegality. *Id.* (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)). At the time the hearing in question was held, RIDOT had considered several alternative configurations for the Wakefield cutoff project and had selected what it considered to be the best design proposal. In addition, the plans, specifications, and estimates relative to the project had been submitted to FHA for approval in September of 1988. To this date, however, those plans, specifications and estimates have not been approved by that office and no money has yet been authorized to obligate FHA to reimburse the State of Rhode Island for any construc-

**514**

tion on the proposed project. Since RIDOT had not received final approval of its plans for the Wakefield cutoff project as of April of 1989, the design was not final, thereby placing the burden on plaintiff to establish that the hearing did not provide a forum for meaningful participation by the public.

Plaintiff asserts that since the plans, specifications and estimates on this project were submitted for approval long before the April hearing and Gordon Hoxie, the Division Administrator of FHA, testified at his deposition that the plans for the project were basically complete as of November of 1988, the 1989 public hearing could not have provided a meaningful opportunity for public input on the Wakefield cutoff project. The fact that the State defendants had previously selected what they considered to be the best alternative for improvements to the Wakefield cutoff, however, does not establish that they had closed their minds to the social, economic and environmental impacts of the project or that they were unwilling to make changes in the design in light of the comments received at the public hearing on April 4, 1989. In addressing a similar argument, one court has stated:

> The Court considers that the proper issue is whether public hearings are conducted "to assure consideration [of social, economic and environmental impacts] at a point that is meaningful." ... That is, the planners are permitted to have a specific proposal and even to be promoting it. Unless there is a specific proposal to be discussed, it is difficult to see how meaningful public meetings could be held, for there would be no focus. However, planners are not permitted to have closed their minds to the social, economic and environmental impacts of their proposal. If these impacts are excessive, they must be willing to reconsider their project. In sum, the law requires good faith objectivity, not subjective impartiality.

*Coalition of Concerned Citizens Against I-670 v. Damian*, 608 F.Supp. at 125 (citations omitted).

In his opening comments at the hearing held in April of 1989, Frederick Vincent, deputy director for RIDOT, stated that the final design for the Wakefield cutoff project was not complete and all comments received at the hearing would be considered. Michael Desmond, Transportation Division Manager at Pare, also stated that the comments made at the hearing would be considered in the final design of the project.

Although the representatives of the State who attended the meeting did not respond orally to any questions, the entire proceeding was recorded and each person received a written response addressing his or her concerns. In response to one individual's question as to how comments at the hearing would affect the final design, RIDOT indicated that all substantive comments would be considered in the final design and any necessary changes would be made. In response to another question concerning a possible change in traffic patterns since the last traffic study was conducted, new traffic counts were taken on Old Tower Hill Road.

Based on the facts outlined above, this Court concludes that plaintiff has not established a genuine issue of fact as to the alleged bad faith of the State defendants in conducting the public hearing on April 4, 1989. Plaintiff's contention that RIDOT was committed to a specific design proposal before the hearing was held is simply not sufficient to create a legitimate dispute as to whether the State defendants provided a meaningful opportunity for public comment on the project as required by 23 U.S.C. § 128.

This Court also concludes that the State defendants provided sufficient notice of the public hearing held on April 4, 1989. The relevant federal regulations regarding the procedures for conducting a public hearing require that:

> (3) Each notice of public hearing shall specify the date, time, and place of the hearing and shall contain a description of the proposal. To promote public understanding, the inclusion of a map or other drawing as part of the notice is encour-

aged. The notice of public hearing shall specify that maps, drawings, and other pertinent information developed by the State highway department and written views received as a result of the coordination outlined in § 790.4(a) will be available for public inspection and copying and shall specify where this information is available; namely, at the nearest State highway department office or at some other convenient location in the vicinity of the proposed project.

(4) A notice of highway design public hearing shall indicate that tentative schedules for right-of-way acquisition and construction will be discussed.

(5) Notices of public hearing shall indicate that relocation assistance programs will be discussed....

23 C.F.R. § 790.7(a) (1987). Notices advertising the April hearing were published on February 21, 1989 and March 21, 1989 in both the Providence Journal and the Narragansett Times. Each notice specified the date, time and place of the hearing and contained a description of the proposal. The notices also indicated that the Plans and Environmental Assessment prepared relative to the project were available for public inspection at RIDOT in Providence. Based on these facts, it is obvious that the State defendants substantially complied with the notice requirements of 23 C.F.R. § 790.7 and therefore did not commit any violation of federal law. *See Coalition on Sensible Transportation, Inc. v. Dole*, 642 F.Supp. 573, 604 (D.D.C.1986), *aff'd*, 826 F.2d 60 (D.C.Cir.1987) (The role of the reviewing court is to determine whether there has been "substantial compliance" with these [Section 128(a)] requirements).

Finally, plaintiff alleges that the State defendants have violated the provisions of 23 U.S.C. § 128 because they have not considered the economic and social effects of the proposed location for the Wakefield cutoff project, its impact on the environment, and its consistency with the goals and objectives of such urban planning as has been promulgated by the community. As indicated in the Corridor/Design Study Report and Environmental Assessment prepared for RIDOT by Pare, the socio-economic, environmental and historical and cultural impacts of each of the proposed alternatives for improvements to the Wakefield cutoff were carefully evaluated in the process of selecting the best design proposal. Thus, it is clear that RIDOT considered the social, economic and environmental impacts in compliance with the federal law.

Based on the undisputed facts set forth above, this Court concludes that defendants have complied fully with the requirements of 23 U.S.C. § 128 and 23 C.F.R. § 790 *et seq.* The motions of both the State and Federal defendants for summary judgment, therefore, should be granted.

### B. *Injunctive Relief*

■ The only relief requested by plaintiff at this point in the proceeding is an injunction to prohibit federal funds from being used on the Wakefield cutoff project. Even if there were genuine issues of fact in dispute in this case, defendants would still be entitled to summary judgment with respect to plaintiff's request for injunctive relief because plaintiff will suffer no irreparable harm if the injunction does not issue.

In order to establish the need for injunctive relief, plaintiff must demonstrate (1) that it will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on defendants; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. *See Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981) (citation omitted). Furthermore, in the case *sub judice*, the Court would not be compelled to issue an injunction unless the equities balanced in favor of plaintiff. *See Essex County Preservation Association v. Campbell*, 536 F.2d 956, 962–63 (1st Cir.1976).

Injunctive relief is an extraordinary remedy which will only be granted if plaintiff has no adequate remedy at law. In the instant case, the State already has con-

demned a portion of plaintiff's property for this highway project. Plaintiff's remedy, therefore, is to follow a well established procedure and file a petition for assessment of damages against the State for the taking of its property by eminent domain in state court. Plaintiff itself has recognized that this adequate remedy exists because it has filed an appropriate action in state court seeking damages from the State of Rhode Island for the taking of its property. It is significant that plaintiff has not claimed that the condemnation is illegal in some way and sought an injunction against the State from continuing with this project in state court. Since this is a partial condemnation, plaintiff will receive full compensation for the taking measured by the fair market value of the property taken plus the diminution in value of the real estate not taken as of the date of condemnation.

In addition, plaintiff has not alleged that this proposed highway project will cause it any environmental harm or other type of injury for which monetary compensation is not an adequate remedy. Furthermore, plaintiff acknowledges that the State defendants will proceed with the Wakefield cutoff highway project whether or not federal financial assistance is received. Plaintiff, therefore, will suffer the exact same harm if the State defendants receive federal assistance for the project as it would if the Court were to prevent them from receiving federal funds. Thus, since plaintiff will not suffer irreparable injury if the injunction is denied, it is not entitled to injunctive relief.

CONCLUSION

For the reasons set forth above, this Court opines that the State defendants have given notice and conducted a public hearing in compliance with the guidelines set forth in 23 U.S.C. § 128 and 23 C.F.R. § 790 *et seq.* and have given proper consideration to the economic, social and environmental impacts of the proposal for improvements to the Wakefield cutoff as required by 23 U.S.C. § 128. In any event, plaintiff has suffered no irreparable harm

which would justify the issuance of an injunction.

Thus, since there are no genuine issues of fact in dispute and defendants are entitled to judgment as a matter of law, the motion of each defendant for summary judgment is granted.

*It is so Ordered.*