<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 99-1469

              AIRPORT IMPACT RELIEF, INC., ET AL.,

                    Plaintiffs, Appellants,

                               v.

                KENNETH R. WYKLE, ADMINISTRATOR,
            FEDERAL HIGHWAY ADMINISTRATION, ET AL.,

                     Defendants, Appellees.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

          [Hon. Robert E. Keeton, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                     Lipez, Circuit Judge,

                   and Fust, District Judge.

                     _____________________

   Peter L. Koff, with whom McGowan, Engel, Tucker & Schultz,
P.A. was on brief, for appellants.
   Stephen H. Burrington and Veronica Eady on brief for
Conservation Law Foundation and Alternatives for Community and
Environment, amici curiae.
   Marc P. Frey and Tinti, Quinn, Grover & Frey, P.C. on brief
for Sierra Club, amicus curiae.
   Jennifer Zacks, Assistant United States Attorney, and
Stephen M. Leonard, with whom Donald K. Stern, United States
Attorney, Thomas F. Reilly, Attorney General, Pierce O. Cray,
Assistant Attorney General, Administrative Law Division, William L.
Pardee, Assistant Attorney General, Environmental Protection
Division, Marilyn Newman and Mintz, Levin, Cohn, Ferris, Glovsky,
and Popeo, P.C. were on brief, for appellees.

                                 
                      ____________________

                       October 1, 1999
                      ____________________

        TORRUELLA, Chief Judge.  Plaintiffs-appellants Airport
Impact Relief, Inc. ("AIR") and individual residents of East
Boston filed the present action to review and set aside the
June 25, 1998 decision of Peter Markle, Division Administrator of
the Federal Highway Administration ("FHWA"), to approve the
Massachusetts Highway Department's ("MHD") revised plans for a
construction project without preparing a supplemental environmental
impact statement ("SEIS").  After conducting what it termed a
"Phase One Nonjury Trial," the district court entered judgment in
favor of the defendants, finding that Markle's decision to approve
the changes to the project without preparing an SEIS was not
"arbitrary and capricious."  Plaintiffs appeal, and we affirm.
                           BACKGROUND
        The Central Artery/Tunnel Project (the "CA/T Project") is
an extensive construction project planned in Boston, Massachusetts
that is designed to ameliorate traffic congestion through downtown
Boston and the two tunnels connecting downtown Boston with East
Boston and Logan Airport.  The portion of the project at issue
connects two new roadways (Route 1A Northbound and Route 1A
Southbound) with the Massachusetts Bay Transportation Authority's
("MBTA") Blue Line Airport Station.  We refer to this portion as
the Logan Airport/Route 1A Interchange.
        In 1985, the FHWA conducted an environmental review of
the CA/T Project and prepared a Final Environmental Impact
Statement ("FEIS").  The FHWA then approved the construction plans
for the CA/T Project in 1986.  In 1991, the project plans were
revised, and the FHWA prepared a Final Supplemental Environmental
Impact Statement ("FSEIS") addressing the changes to the project.  
The FHWA approved the revised project in its 1991 Record of
Decision.
        In 1997, MHD issued a Notice of Project Change ("NPC")
proposing a number of changes to the surface roads and transit
elements of the Logan Airport/Route 1A Interchange.  One change
involves extending service road SR-2 so that it continues north to
connect to the intersection of Prescott and Frankfort Streets.  
Under the previous design, SR-2 detoured east before continuing
north.  The proposed extension of SR-2 would result in the extended
portion being located approximately 750 feet west of SR-2's
location in the 1991 approved plans.  This would move SR-2 to the
west of a seven-acre parcel of land known as the Robie Parcel.  
Thus, SR-2 would no longer bisect the Robie Parcel or separate it
from the airport.  
        In addition to relocating SR-2, the proposed changes
consist of: (1) the relocation of Airport Station approximately 500
feet north of its current location; (2) the redesign of Airport
Station's passenger entrances and bus platforms, including the
elimination of the planned cross-platform connection between Logan
Airport shuttle buses and the Blue Line trains; (3) the elimination
of a bus loop that would have connected both sides of Airport
Station; (4) changes in the elevations of ramps and roadways,
including raising Route 1A Southbound to as high as 36 feet;
(5) the realignment of Ramp T-S and service road SR-10 to Terminal
A; (6) the widening and extension of service road SR-10; (7) the
elimination of service road SR-1; (8) the redesign of Ramp 1A-S as
a surface roadway; and (9) the addition of service road SR-14 to
connect Logan Airport and Airport Station.
        The NPC was circulated for public comment by MHD as part
of the environmental review process required by the Massachusetts
Environmental Protection Act ("MEPA").  Several members of the
public, including representatives of appellant AIR, raised
environmental issues and concerns regarding the NPC.  On May 13,
1998, Massachusetts Secretary of Environmental Affairs Trudy Coxe
determined that the environmental effects of the changes did not
require MHD to prepare a supplemental state environmental impact
report.
        While the state environmental review process proceeded,
MHD also requested federal approval of the changes from the FHWA.  
On April 24, 1998, MHD submitted to the FHWA an Environmental
Reevaluation of the proposed changes, consisting of the NPC and
additional information gathered during the state review process.  
In the Environmental Reevaluation, MHD analyzed the environmental
impacts of the proposed changes and expressed its belief that the
FHWA need not conduct any further environmental review under the
National Environmental Policy Act of 1969 ("NEPA").  In a June 1,
1998 letter to the FHWA, Acting Deputy Regional Administrator Mindy
Lubber of the United States Environmental Protection Agency ("EPA")
expressed the opinion that the changes merited a thorough
environmental review and comment process under NEPA.  After the
FHWA reviewed the Environmental Reevaluation, FHWA Division
Administrator Markle issued a June 25, 1998 decision letter to MHD,
concurring in MHD's conclusion that the proposed changes will have
"negligible environmental impacts," and therefore do not require
the preparation of an SEIS.
        In July of 1998, plaintiffs filed the present action,
challenging the FHWA's approval of the project changes and naming
as defendants; (1) Markle, Division Administrator of the FHWA;
(2) Kenneth R. Wykle, Administrator of the FHWA; (3) Kevin J.
Sullivan, Commissioner of MHD; and (4) Patrick J. Moynihan,
Chairman of MBTA and Secretary of the Executive Office of
Transportation and Construction.  In Count One, plaintiffs claimed
that the June 25, 1998 decision violated section 102(2)(C) of NEPA,
42 U.S.C.  4332(2)(C), and its applicable regulations by failing
to require an SEIS to be prepared.  In Counts Two and Three, which
are not at issue in this appeal, plaintiffs claimed that the FHWA
violated: (1) section 4(f) of the Department of Transportation Act
of 1996, 49 U.S.C.  303(c) and 23 U.S.C.  138, and (2) Title VI
of the Civil Rights Act of 1964, 42 U.S.C.  2000 et seq.  Count
Three was dismissed by stipulation on October 1, 1998.  
        The FHWA's administrative record was filed with the
district court, and the parties sought to resolve the case through
cross-motions for summary judgment.  The district court advised the
parties that any motions for summary judgment would be treated as
motions for judgment upon the conclusion of a "Phase One Nonjury
Trial."   Both sides then moved for judgment in their favor upon
conclusion of the Phase One Trial on both Counts One and Two.  
        The district court conducted a three-day "Phase One
Nonjury Trial" to address three issues: (1) the extent to which
evidence beyond the FHWA's administrative record would be
considered in reviewing the FHWA's decision; (2) whether the
evidence created a genuine issue of material fact that would
require a Phase Two Trial on the merits of the case; and
(3) whether any party was entitled to judgment as a matter of law
at the end of the Phase One Trial.  The parties stipulated to
various facts, and their counsel presented the parties' respective
positions and argued the pending motions.  No witnesses testified
at the trial, but each party moved to admit additional affidavits
and declarations in an attempt to supplement the administrative
record.  Counsel for each side explained to the district court the
project's proposed changes and the likely effects of those changes.  
Counsel argued at length about the factors that the FHWA should
have considered and about whether those factors were in fact
considered.
        In an extensive March 25, 1999 opinion, the district
court: (1) granted in part and denied in part the parties' motions
to supplement the administrative record with affidavits and
declarations; (2) granted defendants' motion for judgment upon
conclusion of the Phase One Trial; and (3) denied plaintiffs'
motion for judgment upon conclusion of the Phase One Trial.  
See Airport Impact Relief, Inc. v. Wykle, 45 F. Supp. 2d 89, 109
(D. Mass. 1999).  In ruling that defendants were entitled to
judgment as a matter of law, the district court first outlined the
numerous facts that were stipulated to by the parties.  See id. at
94-98.  The district court then allowed plaintiffs to supplement
the administrative record with affidavits from Frederick Salvucci
and Mary Ellen Welch to demonstrate factors that the FHWA should
have considered, but did not.  See id. at 98-99.  The court also
allowed defendants to supplement the record with affidavits from
Markle and the FHWA's CA/T Project Administrator, Thomas Smith, to
explain the steps taken by the FHWA to reach their decision.  See
id. at 99.  The court next addressed and dismissed each of
plaintiffs' claims that there were procedural flaws in the FHWA's
decisionmaking process.  See id. at 100-01.  The court then turned
to the likely environmental impacts of the project changes and
found that the FHWA properly considered each impact raised by
plaintiffs and that those impacts were not significant enough to
require the preparation of an SEIS under NEPA.  See id. at 101-07.  
The court also found that the FHWA satisfied its NEPA obligation to
give consideration to the concerns expressed by the EPA in the
June 1, 1998 letter.  See id. at 107.  Finally, the court found
that the FHWA's decision did not violate section 4(f) of the
Department of Transportation Act.  See id. at 108-09.
        Plaintiffs filed a timely notice of appeal and now press
only the issue of whether the FHWA violated NEPA in failing to
prepare an SEIS for the Logan Airport/Route 1A Interchange.  
Appellants claim that the FHWA's decision was arbitrary and
capricious because it did not properly evaluate the environmental
significance of the project changes and changed circumstances.
                           DISCUSSION
I.  Standards of Review
        This appeal entails two levels of review: (1) judicial
review of the FHWA's administrative decision, and (2) appellate
review of the district court's judgment upholding the FHWA's
decision.
        A.  Judicial Review of the Administrative Agency's Action
        Judicial review of a federal agency's compliance with
NEPA is governed by section 10 of the Administrative Procedure Act
(the "APA"), 5 U.S.C.  706(2)(A).  See Sierra Club v. Marsh, 976
F.2d 763, 769 (1st Cir. 1992) ("Sierra Club II") (citing Marsh v.
Oregon Natural Resources Council, 490 U.S. 360, 375 (1989)).  Under
that section, the reviewing court shall hold unlawful and set aside
agency action, findings, and conclusions found to be "arbitrary,
capricious, an abuse of discretion, or otherwise not in accordance
with law."  5 U.S.C.  706(2)(A); see Sierra Club II, 976 F.2d at
769.  "The task of a court reviewing agency action under the APA's
'arbitrary and capricious' standard is to determine whether the
agency has examined the pertinent evidence, considered the relevant
factors, and 'articulate[d] a satisfactory explanation for its
action including a rational connection between the facts found and
the choice made.'"  Penobscot Air Servs., Ltd. v. Federal Aviation
Admin., 164 F.3d 713, 719 (1st Cir. 1999) (citing Motor Vehicle
Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43
(1983) (citation and internal quotation marks omitted)).  The
reviewing court must determine whether the decision was based on a
consideration of the relevant factors and whether the agency made
a clear error of judgment.  See Oregon Natural Resources Council,
490 U.S. at 378 (citing Citizens to Preserve Overton Park, Inc. v.
Volpe, 401 U.S. 402, 416 (1971), overruled on unrelated grounds by
Califano v. Sanders, 430 U.S. 99, 105 (1977)); DuBois v. United
States Dep't of Agric., 102 F.3d 1273, 1285 (1st Cir. 1996), cert.
denied, 521 U.S. 1119 (1997).
        While this is a highly deferential standard of review, it
is not a rubber stamp.  See Citizens Awareness Network, Inc. v.
United States Nuclear Regulatory Comm'n, 59 F.3d 284, 290 (1st Cir.
1995).  The reviewing court must undertake a "thorough, probing,
in-depth review" and a "searching and careful" inquiry into the
record.  Volpe, 401 U.S. at 415-16.  Only by carefully reviewing
the record and satisfying itself that the agency has made a
rational decision can the court ensure that agency decisions are
founded on a reasoned evaluation of the relevant factors.  See
Oregon Natural Resources Council, 490 U.S. at 378; Penobscot Air
Servs., 164 F.3d at 720.
        B.  Appellate Review of the District Court's Decision
        We, of course, are not the first court to review the
FHWA's decision; the district court has already upheld that
decision in a lengthy and thorough opinion.  Thus, we must
determine how much deference, if any, should be afforded to that
opinion.  Appellants argue that because the district court
effectively treated the proceedings below as cross-motions for
summary judgment, we should review its decision de novo.  See
Associated Fisheries of Maine, Inc. v. Daley, 127 F.3d 104, 109
(1st Cir. 1997).  "[W]hen reviewing agency action, we apply the
same legal standards that pertain in the district court and afford
no special deference to that court's decision."  See id. (citing
Massachusetts Dep't of Pub. Welfare v. Secretary of Agric., 984
F.2d 514, 521 n.5 (1st Cir. 1993)).
        Even so, we have previously stated that "some degree of
deference" or an "appropriate hesitation to overturn [the]
judgment" may be appropriate if a district court's determination
turns on factual findings, evidence presented by witnesses, or
lengthy proceedings in which knowledgeable counsel explain the
agency's decisionmaking process in detail.  See Daley, 127 F.3d at
109; Conservation Law Found., Inc. v. Busey, 79 F.3d 1250, 1256
(1st Cir. 1996); Sierra Club II, 976 F.2d at 770; Sierra Club v.
Marsh, 769 F.2d 868, 871-72 (1st Cir. 1985) ("Sierra Club I").  
Just such a situation is presented here.  During a three-day "Phase
One Nonjury Trial," the district court: (1) took evidence in the
form of affidavits that were not part of the administrative record,
see Airport Impact Relief, 45 F. Supp. 2d at 98-99; (2) made
factual and credibility findings regarding those affidavits, see,  
e.g., id. at 101; and (3) conducted exactly the type of "lengthy
district court proceedings in which knowledgeable counsel explain
the agency's decisionmaking process in detail" referred to in
Sierra Club I and Sierra Club II.  In doing so, the district court
supplemented the administrative record and expressly made findings
based on the supplemented record regarding the FHWA's compliance
with NEPA.  Therefore, while we agree with appellants that the
district court's decision is not entitled to "substantial
deference," we also agree with appellees that "[w]e should show
proper hesitation to overturn [the] district court's judgment as to
the reasonableness of an agency decision."  Sierra Club II, 976
F.2d at 770.
        However, in each previous situation in which we have
found such deference to be appropriate, we have found it
unnecessary to outline that level of deference because we concluded
that the district court's decision should have been affirmed even
if no deference was afforded.  See, e.g., id. at 770.  Because we
conclude similarly in this case, we again decline the opportunity
to more specifically refine the "some degree of deference" or
"appropriate hesitation" standard of review.  We leave this task
for another day.
II.  Appellants' Claim That the FHWA Should Have Prepared a
    Supplemental Environmental Impact Statement Under NEPA
        Appellants assert that several changes to the project's
design and changes in circumstances constitute "substantial
changes" and "significant new circumstances" within the meaning of
40 C.F.R.  1502.9(c)(1), thereby requiring an SEIS to be prepared.  
Appellants argue that the FHWA did not prepare an SEIS because it
failed to consider particular effects of the project changes.  As
part of this argument, appellants also claim that the FHWA relied
too heavily on MHD's analysis and failed to conduct its own
independent review of the effects of the project changes.
                     A.  Standard For Requiring a Supplemental Environmental
            Impact Statement to be Prepared
        Section 102(2)(C) of NEPA requires federal agencies to
prepare an environmental impact statement in conjunction with
proposals for legislation and other major federal actions that
significantly affect the quality of the human environment.  See 42
U.S.C.  4332(2)(C).  The duty to supplement an EIS is prescribed
by the implementing regulations promulgated by both the FHWA and
the Council on Environmental Quality ("CEQ").  See Price Road
Neighborhood Ass'n, Inc. v. United States Dep't of Transp., 113
F.3d 1505, 1509 (9th Cir. 1997).  The applicable CEQ regulation
requires that agencies prepare supplemental environmental impact
statements: (1) if the agency makes substantial changes in the
proposed action that are relevant to environmental concerns, or
(2) if there are significant new circumstances or information
relevant to environmental concerns and bearing on the proposed
action or its impacts.  See 40 C.F.R.  1502.9(c)(1).  The
applicable FHWA regulation requires that the FHWA prepare an SEIS:
(1) if changes to the proposed action would result in significant
environmental impacts that were not evaluated in the EIS, or (2) if
new information or circumstances bearing on the proposed action
would result in significant environmental impacts not evaluated in
the EIS.  See 23 C.F.R.  771.130(a).
        The parties agree that these regulations have been
interpreted to require that an SEIS be prepared if the changed
plans and circumstances will affect the quality of the human
environment "in a significant manner or to a significant extent not
already considered" by the federal agency.  See Oregon Natural
Resources Council, 490 U.S. at 374; see also Price Road
Neighborhood Ass'n, 113 F.3d at 1509 (stating that supplemental
documentation is only required when the environmental impacts are
significant or uncertain).  Thus, all parties agree that it is the
"significance" of the environmental effects of the changes that
determines whether or not an SEIS must be prepared.  
        Appellants argue that the district court required them to
meet an overly strict and incorrect legal standard.  Appellants
claim that the standard employed by the district court requires a
showing that the project changes will cause "substantially more
adverse environmental effects," as opposed to the "significant
effects" standard the parties now agree is the proper standard.  In
their opening brief on appeal, appellants argued that they should
not have been required to demonstrate that the effects were
"substantial," rather than "significant."  Appellants then backed
away from this claim at oral argument when they stated that they
were not arguing the difference between "substantial" and
"significant."  Instead, appellants now focus on the district
court's concern for "adverse" environmental effects, rather than
all environmental effects.  However, we first note that in at least
one of the district court's recitations of the standard (in Part
V.A. of its opinion), the court properly focused on all impacts of
the proposed changes, rather than merely the adverse impacts.  The
district court did focus on adverse impacts in two other references
to the standard, but this focus was entirely appropriate given the
circumstances of the case.  While an SEIS is apparently required if
project changes would significantly affect the human environment in
either beneficial or adverse ways, appellants have made no claim
that the project changes would offer significant environmental
advantages.  Appellants argued to the district court that the
project changes significantly affected the environment in negative
ways, and, in addressing these claims, the district court found no
such significant adverse effects to exist.  Therefore, we do not
fault the district court's inclusion of the word "adverse" in its
formulation of the standard on two occasions.
                     B.  FHWA's Alleged Failure to Consider Particular
            Effects of the Design Refinements and Changed
            Circumstances
        Appellants list several project changes and changed
circumstances and argue that an SEIS should have been prepared
because those changes and circumstances will significantly affect
the quality of the human environment.  However, with three
exceptions, appellants do not attempt to explain the manner in
which the environment will be significantly affected.  Issues
adverted to in a perfunctory manner, unaccompanied by some effort
at developed argumentation, are deemed waived for purposes of
appeal.  See Massachusetts Sch. of Law at Andover, Inc. v. American
Bar Ass'n, 142 F.3d 26, 43 (1st Cir. 1998); United States v.
Zannino, 895 F.2d 1, 17 (1st Cir. 1989), cert. denied, 494 U.S.
1082 (1990).  Therefore, we treat appellants' general and
undeveloped arguments regarding possible significant effects as
waived.  Appellants do sufficiently develop their arguments with
respect to three particular design refinements, and we address each
argument in turn.
                         1.  The Relocation of SR-2 and the Possibility of
              Airport Expansion
        Appellants first argue that the FHWA acted arbitrarily
and capriciously by failing to consider the environmental effects
of the relocation of SR-2 and the attendant expansion of Logan
Airport that would result from the relocation of a Park & Fly
parking lot and the transfer of the Robie Parcel to Massport.  
Appellants claim that the relocation of SR-2 is part of a "chain of
federal actions" that connects with certain state actions and will
eventually lead to airport expansion.
        In June of 1991, MHD's predecessor agency entered into a
Memorandum of Understanding with Massport, the City of Boston, and
the owner of a Park & Fly parking lot on Bremen Street.  Under the
terms of the Memorandum, the parties would engage in a three-way
land exchange under which: (1) MHD would receive the land currently
occupied by the Park & Fly lot for use as a buffer park; (2) the
Park & Fly lot would be relocated to a ten-acre site near
Harborside Drive and Maverick Street; and (3) Massport would
receive title to the Robie Parcel for possible expansion of the
airport.  This trilateral land exchange was explicitly made subject
to the occurrence of numerous events, including the acquisition of
funding and permits and the approval of several governmental
bodies.  The parties acknowledge that many of these events have
still not yet occurred and may not occur for up to eight years, if
at all.
        Appellants argue that the administrative record contains
repeated correspondence between MHD and the FHWA about the
trilateral land exchange, the importance of the buffer area as an
environmental mitigation on MHD's part, the value to Massport of
relocating SR-2, and the connection between the acquisition of the
buffer area and the transfer of the Robie Parcel to Massport.  
Based upon this, appellants argue that the FHWA should have
analyzed the possible impacts of airport expansion before
determining that no SEIS was needed.
        Appellants claim that airport expansion is an "impact" of
relocating SR-2.  In DuBois, we stated that the discussion of
impacts must include both direct and indirect effects of a proposed
project.  See DuBois, 102 F.3d at 1286.  Appellants admit that
airport expansion is not a direct effect of the relocation of
SR-2, but they argue that expansion is an indirect effect of that
action.  When attempting to delineate any such indirect effects,
"[t]he agency need not speculate about all conceivable impacts, but
it must evaluate the reasonably foreseeable significant effects of
the proposed action."  Id.  In addition to resolving the issue of
whether airport expansion is an "indirect effect" of the relocation
of SR-2, the question of whether airport expansion is "reasonably
foreseeable" is also the crux of the inquiry into appellants'
alternative argument that airport expansion should be considered as
a "cumulative impact" of this "chain of federal actions."  See 40
C.F.R.  1508.7.   
        We find, as the district court found, that appellants
have not established that airport expansion is "reasonably
foreseeable," as courts have defined that term in this context.  
The Second Circuit opinion in Village of Grand View v. Skinner, 947
F.2d 651 (2d Cir. 1991), is illustrative of how the term
"reasonably foreseeable" has been interpreted.  In that case, the
plaintiffs argued that the expansion in capacity of a highway,
considered in conjunction with possible developments in a highway
corridor, would ultimately require a second span of a bridge fed by
the highway.  Calling the plans for a second span "speculative and
contingent," the Second Circuit upheld the FHWA's failure to
explicitly address the possible bridge expansion as a cumulative
impact of the project change and the possible corridor
developments.  See id. at 660.  The court noted that any bridge
construction must be preceded by as much as ten years of design
studies and project development studies that include consideration
of environmental issues.  See id. at 659.  The court also stated
that the bridge expansion was only one of a number of proposed
alternatives and was therefore "neither imminent nor inevitable."
Id.
        We agree with the district court's view that the present
case is analogous to Grand View.  Any possible airport expansion is
contingent on several events that may or may not occur over an
eight-year span.  These include the acquisition of permits, the
arrangement of funding, the drafting of expansion plans, and other
contingencies that must occur before even the trilateral land
exchange can occur.  These contingencies render any possibility of
airport expansion speculative and, like the bridge expansion in
Grand View, neither imminent nor inevitable.  Therefore, we find
that airport expansion is not "reasonably foreseeable," as that
term has been defined in this context.  Thus, we cannot fault the
FHWA for failing to explicitly address airport expansion as a
"cumulative impact" of the relocation of SR-2 and other
developments.  Nor do we find that the FHWA acted arbitrarily or
capriciously in failing to consider airport expansion as an
"indirect effect" of the relocation of SR-2.  The relocation of
SR-2 certainly begins to create the possibility of airport
expansion, but far too much must happen before airport expansion
could occur for us to describe expansion as even an indirect effect
of the project.
        We find this result to be consonant with the purposes of
NEPA's EIS requirement.  "One purpose of the EIS requirement is to
'provide decisionmakers with sufficiently detailed information to
aid in determining whether to proceed with the action in light of
its environmental consequences.'"  DuBois, 102 F.3d at 1287
(quoting Northwest Resource Info. Ctr., Inc. v. National Marine
Fisheries Serv., 56 F.3d 1060, 1064 (9th Cir. 1995)).  The EIS
requirement "ensures that the agency, in reaching its decision,
will have available, and will carefully consider, detailed
information concerning significant environmental impacts."  
Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 349
(1989).  As pointed out by appellees, there is no "fit" between the
effects of airport expansion that appellants wish to be studied and
the decision to be made by the FHWA.  It would be futile to require
the FHWA to prepare an SEIS studying the environmental impacts of
airport expansion when the FHWA is not the entity with either the
authority or expertise to implement such expansion.  If and when
Massport acquires title to the Robie Parcel and seeks to expand the
airport or otherwise change the manner in which the parcel is used,
that proposal will be subject to the requirements of NEPA as well.  
If all of the necessary contingencies occur and Massport eventually
seeks to expand the airport, the FAA will be the federal agency
required to conduct an environmental review under NEPA, so there is
no reason or need for the FHWA to consider the effects of airport
expansion at this time.  Accordingly, we do not find that the FHWA
acted arbitrarily or capriciously in failing to consider them.
                         2.  Airport Station Design Refinements and Their
              Effect on Transit Capacity
        Appellants next claim that the FHWA failed to evaluate
the significance and consequences of the changes in the design and
function of Airport Station.  In particular, appellants point to
the allegedly negative effect that one change -- the elimination of
the separate bus platforms for the unloading and loading of
passengers -- would have on the transit capacity of the station.
Appellants argue that the district court discussed MHD's
consideration of the transit capacity impacts of the proposed
changes but made no findings regarding the FHWA's consideration of
those impacts.
        However, after MHD specifically determined in its
Environmental Reevaluation that the revised plan did not diminish
transit capacity from present levels, the FHWA independently
reviewed and evaluated MHD's conclusions before determining that no
SEIS was necessary.  Therefore, even though the district court, in
finding that the impact on transit capacity was properly
considered, did not specifically state that the FHWA also
considered that impact, we have no quarrel with the conclusion that
the FHWA's decision was not arbitrary or capricious in this regard.  
        Appellants contest this conclusion, arguing that the
FHWA's approval of MHD's evaluation of environmental impacts -- on
this issue and others -- was not preceded by the type of
independent review and evaluation that is required by NEPA.  The
CEQ regulations require that federal agencies independently
evaluate any environmental information submitted by applicants for
possible use by the agency in preparing an EIS.  See 40 C.F.R.
1506.5(a); see also Essex County Preservation Ass'n v. Campbell,
536 F.2d 956, 959 (1st Cir. 1976) (stating that a federal agency
may even allow the state agency to prepare the EIS itself so long
as the federal agency furnishes guidance, participates in the
preparation, and independently evaluates the statement prior to its
adoption).  The regulation goes on to state that "it is the intent
of this paragraph that acceptable work not be redone, but that it
be verified by the agency."  40 C.F.R.  1506.5(a).  Appellants
claim that the administrative record shows that the FHWA did not
conduct such an independent review of MHD's data, analysis, and
conclusions.
        We disagree.  The district court accepted the declaration
from Markle and specifically found it to be credible to the extent
that it describes the steps taken by the FHWA in reviewing MHD's
data and conclusions.  Markle's declaration describes numerous
activities undertaken by FHWA staff in assessing and reviewing
MHD's Environmental Reevaluation and the information upon which it
was based.  In his declaration, Markle states that the "FHWA
independently reviewed and evaluated the documents and information
contained in the MHD Environmental Reevaluation."  He goes on to
note "dozens" of conversations with his staff and with MHD staff
"to understand fully and to clarify the information submitted by
MHD."  The FHWA requested and received from MHD the public comment
letters submitted on the changed design, as well as MHD's responses
to those letters.  Markle states that he and his staff
"participated in staff visits to the East Boston area to examine
the affected locations with respect to the proposed changes."  He
states that the FHWA utilized the documentation and information
generated by the state environmental review process, as well as
additional documentation submitted directly to the FHWA.  He notes
that the FHWA received and considered several letters from
appellant AIR in particular.  In some areas, Markle goes into more
detail regarding the verification of particular pieces of data
employed by MHD.  For instance, Markle describes at length the
analysis of shuttle bus travel times under the revised plan that
was undertaken by FHWA and how that analysis utilized, but differed
from, MHD's analysis.  Also, Markle states that the FHWA reviewed
the Airport Station design refinements and considered whether the
new design incorporated sufficient room for bus bays to accommodate
future projected needs.  According to Markle, the FHWA concluded
that MHD's analysis was reasonable and that the design provided
sufficient room for future bus bays.  In sum, Markle states that
the 1997-98 reevaluation at issue was the "most extensive
reevaluation of this kind that I have been involved with during my
22  years experience with the FHWA."
        Appellants argue that the declaration submitted by Markle
does not address particular issues sufficiently enough.  To the
extent that appellants seek a written point-by-point recitation of
each piece of information utilized by MHD and the particular steps
undertaken by the FHWA to verify that piece of information,
appellants are correct that they have not received it.  However,
such a detailed delineation is not required; in fact, none of the
applicable regulations require any written findings at all for the
determination of whether an SEIS must be prepared.  See 23 C.F.R.
771.130(a); 40 C.F.R.  1502.9(c).  The declaration accepted by
the district court to explain the FHWA's processes need only be
specific enough to convince us that the FHWA complied with the
regulation requiring that the appropriate work be "verified" and
stating that it need "not be redone."  40 C.F.R.  1506.5(a).  The
information provided in Markle's declaration satisfies us that the
FHWA conducted a sufficiently independent review.
                         3.  The Elevation of Route 1A Southbound and the
              Effect on the Bremen Street Residences
        Appellants next argue that the FHWA failed to evaluate
the effects of raising Route 1A Southbound on the nearby Bremen
Street residences located west of the proposed roadway.  Appellants
argue that, under the new design, Route 1A Southbound will be
raised at least sixteen feet to as high as thirty-six feet above
grade, increasing the noise levels on Bremen Street.  Appellants
point to the noise analysis performed in the 1991 FSEIS, which
described the residences on Bremen Street as "sensitive receptors."  
Appellants note that MHD's own Environmental Reevaluation conceded
that Route 1A Southbound "would be expected to contribute to the
traffic noise levels at Bremen Street."  Appellants claim that
these noise effects are "significant" enough to require the FHWA to
prepare an SEIS, but were ignored by the FHWA.
        However, Markle's declaration clearly states that the
FHWA considered the proposed changes to Route 1A Southbound and
concluded: (1) that its overall elevation was not materially
different from its elevation in the 1991 FSEIS, and (2) that
placing the roadway section in question on a viaduct structure,
rather than on retained fill, would not have a significant
environmental impact.  Markle also notes that the new design would
move Route 1A Southbound further away from Bremen Street.  Markle
states that the FHWA reviewed these changes for noise and visual
impacts on the Bremen Street residences and concluded that, due to
the shift away from Bremen Street and the insignificant elevation
difference, the impacts would not be significant.  The district
court accepted this evaluation, finding that "it is sensible to
conclude" that the modest increase in height would be offset by
moving the highway away from the community.  See Airport Impact
Relief, 45 F. Supp. 2d at 106.
        Appellants do not dispute that this conclusion is a
"sensible" one, but instead argue: (1) that the district court
should not have accepted the Markle declaration on this point, and
(2) that the declaration does not state precisely what the FHWA did
to make its determinations.  Regarding the first argument, we need
only note our decision in Sierra Club II, in which we approved the
supplementation of the administrative record through "affidavits,
depositions, or other proof of an explanatory nature."  See Sierra
Club II, 976 F.2d at 772 (quoting Arkla Exploration Co. v. Texas
Oil & Gas Corp., 734 F.2d 347, 357 (8th Cir. 1984)).  Appellants
argue that there is nothing in the administrative record to
explain, so the Markle declaration is explanatory of nothing and
should not have been admitted.  However, it is precisely when there
is nothing in the administrative record that affidavits such as the
Markle declaration are needed and allowed under Sierra Club II.  
See id.  So long as the new material is explanatory of the
decisionmakers' action at the time it occurred (which we are
convinced that it is) and does not contain post-hoc
rationalizations for the agency's decision (which we are convinced
that it does not), the new material may be considered.  See id. at
772-73.
        Appellants' second argument boils down to a claim that
Markle's declaration is not specific enough in detailing the FHWA's
review process.  Appellants attempt to contrast the detailed noise
analysis performed in the 1991 SEIS with the less-detailed (at
least as documented) analysis performed here.  However, a federal
agency need not perform the detailed environmental analysis of an
EIS before it can determine that no EIS need be prepared.  Such a
requirement would eliminate the threshold requirements of the
regulations in favor of a full EIS or SEIS in every case.  This is
clearly not the law.  See 40 C.F.R.  1502.9(c)(1); 23 C.F.R.
771.130(a).
        Thus, from the materials submitted by the FHWA, it is
clear that the FHWA properly considered the environmental effects
of raising Route 1A Southbound.  Therefore, we agree with the
district court that the FHWA's decision was not arbitrary or
capricious in this regard either.
        C.  Conclusions
        In sum, we find that: (1) the district court applied the
correct standard for determining whether the FHWA was required to
prepare an SEIS in light of the project changes, and (2) the FHWA
properly considered the environmental effects of the project
changes and found that those effects were not significant.  
Therefore, we hold that the FHWA's decision to approve the project
changes without requiring an SEIS was not arbitrary and capricious.
                           CONCLUSION
        Based on the foregoing, we AFFIRM the district court's
entry of judgment in favor of appellees.

</body>

</html>